UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.

ANTHONY MULLIS,

Plaintiff,

v.

THE VANGUARD SCHOOL,

Defendant.

## COMPLAINT AND JURY DEMAND

Anthony Mullis ("Plaintiff"), by and through his attorneys, HKM Employment Attorneys, LLP, for his Complaint and Jury Demand against The Vanguard School (the "Company" or "Defendant"), states and alleges as follows:

## PRELIMINARY STATEMENT

1.    This case arises from Plaintiff's employment with Defendant, during which time Defendant discriminated against Plaintiff because he is a male, practicing Sikh and terminated his employment on the basis of his religion and gender, and/or in retaliation for engaging in the protected activity of requesting religious accommodation and opposing discrimination. Plaintiff therefore seeks relief for Defendant's violations of Title VII of the Civil Rights Act of 1964 ("Title VII") and the Colorado Anti-Discrimination Act ("CADA"). Plaintiff requested religious accommodations from Defendant's unreasonable and non-consistently enforced dress code guidelines in the form of simply not being required to cut his hair or express his religious beliefs

according to the unreasonable dictates of his employer.  Defendant applied its unreasonable and non-consistently enforced dress code guidelines to require that Plaintiff, as a male, cut his hair to conform to Defendant's views of traditional gender stereotypes.  Defendant applied its unreasonable and non-consistently enforced dress code guidelines to also require that Plaintiff, as a male Sikh with uncut hair, could not wear a head covering that was consistent with his religious beliefs as a nontraditional male Sikh, because Defendant claimed Plaintiff would be misconstrued as being "gang-affiliated" if he wore a Patka consistent with his beliefs and practices as a nontraditional male Sikh.  Defendant instead insisted Plaintiff had to wear a Turban that was inconsistent with Plaintiff's religious practices and beliefs in order to conform to Defendant's discriminatory dress code guidelines.

2.      More specifically, on or about August 14, 2019, Plaintiff agreed to wear a head covering to cover his uncut hair, despite never before wearing a head covering other than to religious ceremonies.  Plaintiff requested that he be allowed to wear a Patka.  A Patka is a head covering worn by nontraditional male followers of the Sikh faith.  Though Plaintiff was initially given approval to wear a Patka by management, Defendant's human resources refused on the sole basis that a Patka supposedly could be "easily mistaken for being gang-affiliated."  Defendant insisted Plaintiff could only wear a Turban or he would be fired, even though Plaintiff explained that wearing a Turban would be inconsistent with his religious beliefs and was reserved by nontraditional male Sikhs for only High Holy Days or formal religious ceremonies.  Plaintiff observed his position was posted as vacant online later that very same day.

3.      The next day, on August 15, 2019, the Company terminated Plaintiff, telling him it had "reevaluated the relationship and decided it was no longer working."  Defendant, an

educational institution in charge of educating the youth of Colorado, continues to claim based on uneducated stereotypes, that a Turban was a reasonable religious accommodation based on its own views of how Plaintiff should be expressing his religious beliefs.  Defendant further claims it terminated Plaintiff for not wearing a Turban when he went to the school early before classes on August 15, 2019 to inquire why his position was posted online as vacant the evening prior. Plaintiff's refusal to wear a Turban, in light of his explanations to the Company of it not comporting with his religious views, was protected activity and thus this is a rare case with direct evidence of Defendant's discriminatory animus for terminating Plaintiff.

## PARTIES

4.     At all times relevant to this Complaint, Plaintiff was a resident of Colorado. Plaintiff currently resides in Clarksville, Ohio.

5.     Defendant The Vanguard School is a Colorado corporation with a principal office located at 1605 S. Corona Avenue, Colorado Springs, Colorado 80905.

## JURISDICTION AND VENUE

6.     Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

7.     This Court has original jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.  This Court has jurisdiction over Plaintiff's state claims pursuant to 28 U.S.C. § 1367 because Plaintiff's state law claims are so related to the federal claims that they form part of the same case or controversy.

8.     This Court also has original jurisdiction over Plaintiff's claims based on diversity of citizenship pursuant to 28 U.S.C. § 1332.  The amount in controversy exceeds the sum or value

of $75,000, exclusive of interest and costs.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because the employment practices and other conduct alleged to be unlawful occurred in this District.

## ADMINISTRATIVE REMEDIES HAVE BEEN EXHAUSTED

10.    Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

11.    Plaintiff filed his Charge of Discrimination Numbers 32A-2020-00291 and E2000006664 (collectively, "Charge") with the Equal Employment Opportunity Commission ("EEOC") and Colorado Civil Rights Division, respectively, for gender and religious discrimination and retaliation against Defendant on or about February 3, 2020.  Based on the evidence obtained during the investigation of the Charge, the CCRD determined there is evidence to support a probable cause determination that Defendant violated CADA by engaging in discriminatory failure to accommodate based on religion, discrimination in the terms and conditions of employment, discriminatory discharge, and retaliation.

12.    After participating in a failed conciliation with the CCRD, Plaintiff's claims were dismissed to allow him to file a civil action on his CADA claims on November 25, 2020, and Plaintiff filed the present action within ninety (90) days of same.  Plaintiff has additionally requested that a Notice of Right to Sue be issued from the EEOC concerning his claims under Title VII, which will likely be received prior to Defendant's responsive pleading.

## FACTUAL ALLEGATIONS

13.    Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

14.    Plaintiff was hired by Defendant in or around May 2019 to work as a Spanish Teacher.  Plaintiff's start date was on or about July 26, 2019.

15.    At all relevant times, Plaintiff met or exceeded Defendant's legitimate performance expectations.

16.    Defendant's inconsistently enforced dress code states, "Staff is expected to dress in a mature, professional manner which compliments [sic] the traditional atmosphere of The Vanguard School."  For male employees, the Company requires, among other things, that:

> Hair must be clean, neat, and styled traditionally.  Only natural colors are allowed.  No unusual or radical hairstyles.  Hair must not be longer than the bottom of the ears or hang in the eyes.  No ponytails.  No hair accessories are allowed.  Facial hair must be neatly groomed.

17.    For female employees, the Company requires, among other things, that:

> Hair must be clean, neat and styled traditionally.  Only natural colors and natural-looking highlights are allowed.  No unusual or radical hairstyles.

18.    Additionally, the Company requires that: "Clothing and jewelry must be gender appropriate." …

19.    Defendant's dress code also provides: "Anyone with a medical or religious reason for not following the above dress code guidelines will need permission from the principal prior to non-compliance with this dress code."  Anyone not in compliance with the dress code will be notified and given the opportunity to leave the campus to remedy their non-compliance.

20.    According to Defendant's Position Statement submitted to the Colorado Civil Rights Division, Defendant's stated rationale for its dress code guidelines is "to promote its core value of providing a rigorous classical education to its students in a highly professional atmosphere," consistent with the "traditional atmosphere" of the school.

21.     It is undisputed that Plaintiff expressed to management that he did not cut his hair, which was worn in a neat bun, due to his religious beliefs.

22.     It is further undisputed that Plaintiff requested an exemption from Defendant's dress code guidelines due to his religious beliefs.

23.     More specifically, on or about August 7, 2019, David Kennington, Defendant's Assistant Principal, informed Plaintiff that his hair length did not comply with the Company's dress code guidelines.

24.     At the time, and at all times relevant thereafter, Plaintiff wore his hair tied back in a clean, neatly-groomed, professional-looking bun.

25.     Plaintiff engaged in the protected activity of explaining to Mr. Kennington that, for religious reasons consistent with his Sikhism faith, he could not cut his hair.

26.     Mr. Kennington told Plaintiff he would discuss his request for a religious accommodation from the dress code guidelines with Collin Mullaney, Defendant's Executive Director and High School Principal, and Shaleen Prehm, Defendant's human resources representative for the school, and follow up with Plaintiff.

27.     On or about August 12, 2019, Plaintiff was asked to meet with Mr. Kennington and Ms. Prehm to discuss his request for a religious accommodation.  Plaintiff again engaged in the protected activity of explaining he could not cut his hair due to his sincerely held religious beliefs, and he again requested an exemption from the school's dress code guidelines.

28.     Plaintiff was asked to prove his religious affiliation, despite reiterating his sincerely and deeply held religious beliefs that had led to his transition to Sikhism.

29.     In response to Plaintiff requesting that he be allowed to continue wearing his hair

tied back in a clean, neatly-groomed, professional-looking bun, he was told, "Absolutely not.  You need to cut your hair, or you will be fired."

30.     On or about August 13, 2019, the day before classes started, Plaintiff had another meeting with Mr. Kennington and Ms. Prehm regarding his request for a religious accommodation. Initially, Mr. Kennington and Ms. Prehm maintained the Company's outright refusal to allow a religious accommodation, telling Plaintiff he would be fired if he did not cut his hair.

31.     Plaintiff explained again that he could not cut his hair and, after consulting with an attorney regarding his religious rights, expressed his reasonable and good faith belief that he had a right to the religious accommodation he requested, given that it would not cause any undue hardship for Defendant.

32.     In response, Plaintiff was eventually told it would be fine for him to wear a head covering, such as a Turban, which is a head covering worn by traditional, male followers of the Sikh religion.  Nontraditional male Sikhs, such as Plaintiff, do not wear Turbans except for High Holy Days and formal religious ceremonies.

33.     Plaintiff agreed he would wear a head covering.  Plaintiff did not, however, agree to wear a Turban, or indicate that a Turban was a reasonable accommodation, given that it was inconsistent with Plaintiff's religious beliefs.

34.     August 14, 2019 was the first day of classes for the school.  While Plaintiff was teaching, Mr. Kennington walked into his classroom and asked him, audibly enough for students to hear, "Where's your Turban?"  Plaintiff respectfully requested if they could speak after class.

35.     After Plaintiff's first period, Plaintiff was pulled into a meeting with Mr. Mullaney, Mr. Kennington, and Ms. Prehm.  Mr. Mullaney was visibly angry.  Plaintiff explained he had not

had an opportunity to obtain a head covering the evening prior to the first day of classes. Plaintiff also explained that he had never previously practiced his faith by wearing a Turban. He told the Company that his mentor during his transition to Sikhism similarly did not wear a Turban except for religious ceremonies. Plaintiff also explained that he had not yet been paid for any work he performed for the Company and would not be able to afford a head covering even if he had known a store that would have been open the evening prior in Colorado Springs, Colorado that sold religious head coverings.

36.     Plaintiff also repeated his willingness to wear a head covering during the August 14, 2019 meeting. The Company accordingly gave him a $200 cash advance to allow him to purchase a head covering to wear while teaching.

37.     Later that same day, Plaintiff went to speak to Mr. Kennington again and showed him a picture of a Patka, the head covering that was consistent with his religious beliefs as a non-traditional, male Sikh.

38.     Mr. Kennington told Plaintiff the Patka was acceptable.

39.     Minutes later, just after Plaintiff had left the school after finishing work, Ms. Prehm called him and told him he could not wear a Patka. Ms. Prehm had clearly spoken with Mr. Kennington and was trying to walk-back Mr. Kennington's approval of Plaintiff's request to be allowed to wear a Patka.

40.     Ms. Prehm first presumptuously told Plaintiff, a practicing Sikh, that a Patka was not acceptable because she believed it was not a head covering worn by adult practicing followers of the Sikh faith.

41.     Plaintiff explained to Ms. Prehm that a Patka is worn by nontraditional male Sikhs,

which he considered himself to be because he was not born into the Sikh faith and his sincerely held beliefs were consistent with more contemporary views of the religion's tenets, rather than strict adherence to more literal interpretations of Sikh religious doctrines. Plaintiff explained that for nontraditional followers like himself, Turbans were reserved for only religious ceremonies and High Holy Days and that it would be inconsistent with his religious beliefs to wear a Turban.

42.     Ms. Prehm started to become angry and told Plaintiff that his expression of his religious beliefs was unacceptable because the Patka could supposedly "be easily mistaken for being gang-affiliated." In other words, Ms. Prehm likened Plaintiff's sincere expression of his religious beliefs to a durag associated with gang violence, as if students and/or staff members might assume Plaintiff was in a Colorado Springs gang or somehow condoned gang violence as a result of his expression of his sincerely held religious beliefs.

43.     In its Position Statement submitted to the CCRD, Defendant confirmed that it refused to allow Plaintiff to wear a Patka based solely on the fact that Defendant believes the religious head covering looks like it could be gang-affiliated:

> Given concerns regarding the appearance of a patka, in conjunction with conferral with the school's legal counsel, The Vauguard School reaffirmed that a turban would be acceptable, but a patka would not. The appearance of a patka can easily be mistaken for a gang-affiliated head covering where the school is located [in Colorado Springs, Colorado] (and likely throughout the United States). As such, the school determined that the patka did not comply with *the underlying spirit* of the dress code to present a professional appearance.

Defendant's Position Statement, p. 3.

44.     In reaching its determination in favor of Plaintiff on his claim that Defendant failed to accommodate his religious beliefs, the CCRD noted that "Respondent admitted, however, that it could not identify any gangs with which such a [head] covering is affiliated."

45.     Ms. Prehm was insistent in attempting to control the way in which Plaintiff practiced his religion and also insisted that wearing a Turban instead of a Patka would be a better way for Plaintiff to express his religious beliefs because it would supposedly give him the opportunity to explain his religious beliefs to students and other staff members.  Plaintiff failed to see how he would not have the same opportunity if he was allowed to wear a Patka.

46.     At the end of their conversation, Ms. Prehm angrily told Plaintiff, "There will be no more discussion."  Ms. Prehm gave Plaintiff the ultimatum of the following four options: (1) wear a Turban; (2) wear a wig; (3) cut your hair; or (4) get fired.  Ms. Prehm then ended the call by hanging up on Plaintiff.

47.     Later that same day on August 14, 2019, Plaintiff noticed the Company had posted his position for hire online.

48.     On August 15, 2019, Plaintiff arrived at the school early and requested to speak to management about his position being posted online.  After having to wait approximately thirty minutes, Plaintiff met with Mr. Kennington, Mr. Mullaney, and Ms. Prehm.  Plaintiff was told the Company "had reevaluated the relationship and decided it was no longer working and [Plaintiff] was being let go."  Plaintiff asked if he was being terminated because he had asked to be allowed to wear a Patka.  The Company's representatives refused to answer and instead simply told Plaintiff he was an at-will employee and they did not need to give him a reason in order to terminate him.

49.     At no time during the termination meeting did anyone on behalf of the Company claim that Plaintiff was being terminated because he had not worn a head covering to meet with management early in the morning on August 15, 2019.

**FIRST CLAIM FOR RELIEF**

**(Failure to Accommodate Based on Religion in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"))**

50.     Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

51.     Plaintiff was qualified for the position he held with Defendant and at all times met his employer's legitimate performance expectations.

52.     Throughout his employment with Defendant, and currently, Plaintiff had bona-fide religious beliefs and/or practices that Defendant claimed conflicted with its dress code guidelines.

53.     Plaintiff has sincere and deeply held religious beliefs consistent with being a nontraditional male Sikh that prevent him from being able to cut his hair.

54.     Plaintiff informed Defendant of his sincerely held religious belief as a nontraditional male Sikh that prevented him from being able to cut his hair.

55.     Plaintiff has sincere and deeply held religious beliefs consistent with being a nontraditional male Sikh that prevent him from being able to wear a Turban, other than on High Holy Days and for religious ceremonies.

56.     Plaintiff informed Defendant of his sincerely held religious belief as a nontraditional male Sikh that prevented him from being able to wear a Turban, other than on High Holy Days and for religious ceremonies.

57.     Plaintiff requested that he be permitted to not cut his hair, which was consistent with his religious beliefs as a nontraditional male Sikh.

58.     Plaintiff requested that he be allowed to wear a Patka, which was a religious head covering consistent with his religious beliefs as a nontraditional male Sikh.

59.     Plaintiff's request that he be permitted to not cut his hair, and instead wear his hair tied back in a clean, neatly groomed, professional-looking bun, would not have caused Defendant an undue hardship.

60.     Plaintiff's request that he be allowed to wear a Patka would not have caused Defendant an undue hardship.

61.     Defendant refused to allow Plaintiff to wear his hair tied back in a clean, neatly groomed, professional-looking bun, unless he wore a Turban that was inconsistent with his religious beliefs and/or practices.

62.     Defendant refused to allow Plaintiff to wear a Patka, which Defendant unreasonably believed would make Plaintiff appear as if he were affiliated with a gang.

63.     Defendant did not offer Plaintiff any reasonable accommodation for Plaintiff's religious beliefs and/or practices.

64.     Defendant violated Title VII by failing to reasonably accommodate Plaintiff's religious practices and/or beliefs.

65.     The effect of the practices complained of herein has been to deprive Plaintiff of equal employment opportunities and otherwise adversely affect his employment status because of his religion.

66.     Defendant's above-described conduct was willful, wanton and/or committed with conscious and/or reckless indifference to Plaintiff's equal rights under the law.

67.     As a result of Defendant's above-described discriminatory actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and he is entitled to such general and special damages, economic damages,

punitive damages and attorneys' fees and costs as permitted by law.

### SECOND CLAIM FOR RELIEF
**(Discriminatory Discharge Based on Religion in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq.* ("Title VII"))**

68.     Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

69.     Plaintiff's religion is Sikhism.

70.     On or about August 12, 2019, Plaintiff informed Defendant that he could not cut his hair to comply with Defendant's view of its dress code guidelines because it would be against his sincerely held religious beliefs.

71.     On or about August 14, 2019, Plaintiff informed Defendant that he could not wear a Turban because it was inconsistent with his religious beliefs and/or practices as a nontraditional male Sikh.  Plaintiff explained to Defendant that Turbans were reserved for High Holy Days or religious ceremonies.

72.     On or about August 14, 2019, Plaintiff informed Defendant that he could wear a Patka if a head covering was necessary.  Plaintiff explained to Defendant that Patkas are worn by young, male nontraditional Sikhs, such as Plaintiff; and that Turbans were worn only by traditional followers of the Sikh faith.

73.     Defendant's insistence that Plaintiff wear a Turban applied only to Plaintiff and did not apply to any of Defendant's employees who were not Sikhs.

74.     Defendant engaged in such disparate treatment of Plaintiff based solely upon him being a Sikh.

75.     Defendant admits it terminated Plaintiff for not wearing a Turban.

76.     Thus, Defendant has violated Title VII by discriminating against Plaintiff because of Plaintiff's religion.

77.     Defendant has also violated Title VII by maintaining a discriminatory policy, the effect of which deprived Plaintiff of equal employment opportunities and otherwise adversely affected his employment status based on his religion.

78.     Defendant's above-described conduct was willful, wanton and/or committed with conscious and/or reckless indifference to Plaintiff's equal rights under the law.

79.     As a result of Defendant's above-described discriminatory actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and he is entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

### THIRD CLAIM FOR RELIEF
**(Discrimination Based on Gender and Failure to Conform to Traditional Gender Stereotypes in Violation of Title VII, 42 U.S.C. §§ 2000e, *et seq.*)**

80.     Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

81.     Plaintiff is a male who, because of his Sikh faith, is prevented from being able to cut his hair.  At all times relevant, Plaintiff wore his hair in a clean, neatly groomed, professional-looking bun.

82.     Plaintiff was qualified for the position he held during his employment with Defendant.

83.     Defendant maintained dress code guidelines that required Plaintiff to cut his hair, when employees outside of Plaintiff's protected class were not required to cut their hair or

prevented from wearing their hair in a clean, neatly groomed, professional-looking bun.

84.     Defendant further maintained that its dress code guidelines prevented Plaintiff from being able to wear a Patka, and instead required that he wear a Turban because of his gender and/or failure to conform to traditional gender stereotypes.   Employees outside of Plaintiff's protected class were not required to wear head coverings and, in particular, were not required to wear a Turban in order to comply with Defendant's dress code guidelines.

85.     Defendant's above-described policies were not consistently enforced among Defendant's employees and disparately impacted males such as Plaintiff based on their gender and/or failure to conform to traditional gender stereotypes.  The effect of such policies deprived Plaintiff of equal employment opportunities and adversely affected his employment status based on his gender and/or failure to conform to traditional gender stereotypes.

86.     Defendant engaged in such disparate treatment of Plaintiff based solely upon him being a male and/or his failure to conform to traditional gender stereotypes.

87.     Defendant admits it terminated Plaintiff because he is a male with uncut hair who did not wear a Turban on the school's premises.

88.     Thus, Defendant has violated Title VII by discriminating against Plaintiff because of Plaintiff's gender and/or his failure to conform to traditional gender stereotypes.

89.     Defendant's above-described conduct was willful, wanton and/or committed with conscious and/or reckless indifference to Plaintiff's equal rights under the law.

90.     As a result of Defendant's above-described discriminatory actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and he is entitled to such general and special damages, economic damages,

punitive damages and attorneys' fees and costs as permitted by law.

## FOURTH CLAIM FOR RELIEF
### (Retaliation in Violation of Title VII, 42 U.S.C. § 2000e, *et seq.*)

91.     Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

92.     Plaintiff engaged in statutorily protected activity when he repeatedly requested accommodation based on his religious beliefs and/or practices.  Specifically, Plaintiff repeatedly requested that he not be required to cut his hair because it was against his religious beliefs and/or practices.  Plaintiff further repeatedly requested that he be allowed to wear a Patka, should Defendant insist that he was required to wear a head covering, consistent with his religious beliefs as a nontraditional male Sikh.

93.     Plaintiff further engaged in statutorily protected activity when he did not wear a Turban, in conjunction with repeatedly conveying to Defendant that wearing a Turban would be requiring him to practice his religion in a way that was inconsistent with his religious beliefs.  By doing so, Plaintiff was engaging in protected opposition to an unlawful employment practice.  *See EEOC v. Jetstream Group Services, Inc.*, 134 F. Supp. 3d 1298, 1323 (D. Colo. 2015) (explaining that refusing to remove a hijab could sufficiently convey opposition to an unlawful employment practice and constitute protected activity).

94.     Plaintiff engaged in the above-described protected activity because he had a reasonable belief that he was entitled to a religious accommodation that would not pose an undue hardship, and because he reasonably believed Defendant's attempt to dictate his expression of his religious beliefs in a way that was inconsistent with his religious practices and beliefs was unlawful.

95.     Defendant terminated Plaintiff's employment on August 15, 2019 for Plaintiff's above-described protected activity.

96.     Defendant's termination of Plaintiff is in violation of Title VII and had the effect of depriving Plaintiff of rights and privileges enjoyed by persons who have not engaged in activities protected by Title VII.

97.     Defendant's above-described conduct was willful, wanton and/or committed with conscious and/or reckless indifference to Plaintiff's equal rights under the law.

98.     As a direct and proximate result of Defendant's above-described retaliatory actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and he is entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

**<u>FIFTH CLAIM FOR RELIEF</u>**
**(Failure to Accommodate Based on Religion in Violation of the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401, *et seq.* ("CADA"))**

99.     Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

100.    Plaintiff was qualified for the position he held with Defendant and at all times met his employer's legitimate performance expectations.

101.    Throughout his employment with Defendant, and currently, Plaintiff had bona-fide religious beliefs and/or practices that Defendant claimed conflicted with its dress code guidelines.

102.    Plaintiff has sincere and deeply held religious beliefs consistent with being a nontraditional male Sikh that prevent him from being able to cut his hair.

103.    Plaintiff informed Defendant of his sincerely held religious belief as a

nontraditional male Sikh that prevented him from being able to cut his hair.

104.   Plaintiff has sincere and deeply held religious beliefs consistent with being a nontraditional male Sikh that prevent him from being able to wear a Turban, other than on High Holy Days and for religious ceremonies.

105.   Plaintiff informed Defendant of his sincerely held religious belief as a nontraditional male Sikh that prevented him from being able to wear a Turban, other than on High Holy Days and for religious ceremonies.

106.   Plaintiff requested that he be permitted to not cut his hair, which was consistent with his religious beliefs as a nontraditional male Sikh.

107.   Plaintiff requested that he be allowed to wear a Patka, which was a religious head covering consistent with his religious beliefs as a nontraditional male Sikh.

108.   Plaintiff's request that he be permitted to not cut his hair, and instead wear his hair tied back in a clean, neatly groomed, professional-looking bun, would not have caused Defendant an undue hardship.

109.   Plaintiff's request that he be allowed to wear a Patka would not have caused Defendant an undue hardship.

110.   Defendant refused to allow Plaintiff to wear his hair tied back in a clean, neatly groomed, professional-looking bun, unless he wore a Turban that was inconsistent with his religious beliefs and/or practices.

111.   Defendant refused to allow Plaintiff to wear a Patka, which Defendant unreasonably believed would make Plaintiff appear as if he were affiliated with a gang.

112.   Defendant did not offer Plaintiff any reasonable accommodation for Plaintiff's

religious beliefs and/or practices.

113.    Defendant violated CADA by failing to reasonably accommodate Plaintiff's religious practices and/or beliefs.

114.    Defendant further violated CADA, C.R.S. § 24-34-402(5), by requiring compliance with unreasonable dress code guidelines that disparately impacted Plaintiff's religion and not applying its dress code guidelines consistently, such that Plaintiff was deprived of equal employment opportunities and his employment status was adversely affected because of his religion.

115.    Defendant's above-described conduct was willful, wanton and/or committed with conscious and/or reckless indifference to Plaintiff's equal rights under the law.

116.    As a result of Defendant's above-described discriminatory actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and he is entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

## SIXTH CLAIM FOR RELIEF
### (Discriminatory Discharge Based on Religion in Violation of the Colorado Anti-Discrimination Act, C.R.S. § 24-34-401, *et seq.* ("CADA"))

117.    Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

118.    Plaintiff's religion is Sikhism.

119.    On or about August 12, 2019, Plaintiff informed Defendant that he could not cut his hair to comply with Defendant's view of its dress code guidelines because it would be against his sincerely held religious beliefs.

120.     On or about August 14, 2019, Plaintiff informed Defendant that he could not wear a Turban because it was inconsistent with his religious beliefs and/or practices as a nontraditional male Sikh.  Plaintiff explained to Defendant that Turbans were reserved for High Holy Days or religious ceremonies.

121.     On or about August 14, 2019, Plaintiff informed Defendant that he could wear a Patka if a head covering was necessary.  Plaintiff explained to Defendant that Patkas are worn by young, male nontraditional Sikhs, such as Plaintiff; and that Turbans were worn only by traditional followers of the Sikh faith.

122.     Defendant's insistence that Plaintiff wear a Turban applied only to Plaintiff and did not apply to any of Defendant's employees who were not Sikhs.

123.     Defendant engaged in such disparate treatment of Plaintiff based solely upon him being a Sikh.

124.     Defendant admits it terminated Plaintiff for not wearing a Turban.

125.     Thus, Defendant has violated CADA by discriminating against Plaintiff because of Plaintiff's religion.

126.     Defendant has also violated CADA by maintaining a discriminatory policy, the effect of which deprived Plaintiff of equal employment opportunities and otherwise adversely affected his employment status based on his religion.  Defendant further violated CADA, C.R.S. § 24-34-402(5), by requiring compliance with unreasonable dress code guidelines that disparately impacted Plaintiff's religion and not applying its dress code guidelines consistently to employees outside of Plaintiff's protected class.

127.     Defendant's above-described conduct was willful, wanton and/or committed with

conscious and/or reckless indifference to Plaintiff's equal rights under the law.

128.    As a result of Defendant's above-described discriminatory actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and he is entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

## SEVENTH CLAIM FOR RELIEF
**(Discrimination Based on Gender and Failure to Confirm to Traditional Stereotypes in Violation of CADA, C.R.S. § 24-34-401, *et seq.*)**

129.    Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

130.    Plaintiff incorporates by reference the above paragraphs as though set forth fully and separately herein.

131.    Plaintiff is a male who, because of his Sikh faith, is prevented from being able to cut his hair.  At all times relevant, Plaintiff wore his hair in a clean, neatly groomed, professional-looking bun.

132.    Plaintiff was qualified for the position he held during his employment with Defendant.

133.    Defendant maintained dress code guidelines that required Plaintiff to cut his hair, when employees outside of Plaintiff's protected class were not required to cut their hair or prevented from wearing their hair in a clean, neatly groomed, professional-looking bun.

134.    Defendant further maintained that its dress code guidelines prevented Plaintiff from being able to wear a Patka, and instead required that he wear a Turban because of his gender and/or failure to conform to traditional gender stereotypes.   Employees outside of Plaintiff's protected

class were not required to wear head coverings and, in particular, were not required to wear a Turban in order to comply with Defendant's dress code guidelines.

135.     Defendant's above-described policies were unreasonable and were not consistently enforced among Defendant's employees.  Defendant's above-described dress code guidelines unreasonably and disparately impacted males such as Plaintiff based on their gender and/or failure to conform to traditional gender stereotypes.  The effect of such policies deprived Plaintiff of equal employment opportunities and adversely affected his employment status based on his gender and/or failure to conform to traditional gender stereotypes.

136.     Defendant engaged in such disparate treatment of Plaintiff based solely upon him being a male and/or his failure to conform to traditional gender stereotypes.

137.     Defendant admits it terminated Plaintiff because he is a male with uncut hair who did not wear a Turban on the school's premises.

138.     Thus, Defendant has violated CADA by discriminating against Plaintiff because of Plaintiff's gender and/or his failure to conform to traditional gender stereotypes.

139.     Defendant's above-described conduct was willful, wanton and/or committed with conscious and/or reckless indifference to Plaintiff's equal rights under the law.

140.     As a result of Defendant's above-described discriminatory actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and he is entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

**EIGHTH CLAIM FOR RELIEF**
**(Retaliation in Violation of CADA, C.R.S. § 24-34-401, *et seq.*)**

141.     Plaintiff incorporates by reference the above paragraphs as though set forth fully

and separately herein.

142.    Plaintiff engaged in statutorily protected activity when he repeatedly requested accommodation based on his religious beliefs and/or practices.  Specifically, Plaintiff repeatedly requested that he not be required to cut his hair because it was against his religious beliefs and/or practices.  Plaintiff further repeatedly requested that he be allowed to wear a Patka, should Defendant insist that he was required to wear a head covering, consistent with his religious beliefs as a nontraditional male Sikh.

143.    Plaintiff further engaged in statutorily protected activity when he did not wear a Turban, in conjunction with repeatedly conveying to Defendant that wearing a Turban would be requiring him to practice his religion in a way that was inconsistent with his religious beliefs.  By doing so, Plaintiff was engaging in protected opposition to an unlawful employment practice.  *See EEOC v. Jetstream Group Services, Inc.*, 134 F. Supp. 3d 1298, 1323 (D. Colo. 2015) (explaining that refusing to remove a hijab could sufficiently convey opposition to an unlawful employment practice and constitute protected activity).

144.    Plaintiff engaged in the above-described protected activity because he had a reasonable belief that he was entitled to a religious accommodation that would not pose an undue hardship, and because he reasonably believed Defendant's attempt to dictate his expression of his religious beliefs in a way that was inconsistent with his religious practices and beliefs was unlawful.

145.    Defendant terminated Plaintiff's employment on August 15, 2019 for Plaintiff's above-described protected activity.

146.    Defendant's termination of Plaintiff is in violation of CADA and had the effect of

depriving Plaintiff of rights and privileges enjoyed by persons who have not engaged in activities protected by CADA.

147.    Defendant's above-described conduct was willful, wanton and/or committed with conscious and/or reckless indifference to Plaintiff's equal rights under the law.

148.    As a direct and proximate result of Defendant's above-described retaliatory actions, Plaintiff has suffered damages, including lost wages and benefits, emotional pain and suffering, embarrassment, and inconvenience; and he is entitled to such general and special damages, economic damages, punitive damages and attorneys' fees and costs as permitted by law.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendant, and order the following relief as allowed by law:

A.    Compensatory damages, including but not limited to those for garden variety emotional distress, inconvenience, and mental anguish;

B.    Back pay and benefits;

C.    Front pay and benefits;

D.    Punitive damages;

E.    Attorneys' fees and costs of this action, as permitted by law;

F.    Pre-judgment and post-judgment interest at the highest lawful rate; and

G.    Such further relief as the Court deems just and proper.

## **JURY TRIAL DEMAND**

Plaintiff requests a trial by jury on all issues so triable.

Respectfully submitted this 22nd day of February, 2021.

HKM EMPLOYMENT ATTORNEYS, LLP

By: *s/ Shelby Woods*
Claire E. Hunter
Shelby Woods
HKM Employment Attorneys, LLP
730 17th Street, Suite 750
Denver, Colorado 80202
chunter@hkm.com
swoods@hkm.com
*Attorneys for Plaintiff Anthony Mullis*